IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TALMADGE TIPPETT and PHYLLIS | : | CIVIL ACTION |
| TIPPETT | : | |
| | : | No. 14-4710 |
| v. | : | |
| | : | |
| AMERIPRISE INSURANCE | : | |
| COMPANY, et al | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                **March 25, 2015**

Plaintiffs Talmadge Tippett and Phyllis Tippett, a married couple, bring this action

against Ameriprise Insurance Company (Ameriprise) and IDS Property Casualty Company (IDS)

(together, Insurers), the insurance companies that issued the Tippetts' homeowners' insurance

policy, as well as All American Adjusters (All American), the insurance adjuster hired by the

Insurers to evaluate the Tippetts' claim after a fire damaged their house. The Tippetts assert

contract-based and statutory claims against the Insurers, as well as statutory, third-party

beneficiary, and negligence claims against All American. The Insurers move to dismiss four

counts of the Tippetts' Complaint and to strike portions of two other counts. All American

separately moves to dismiss all six counts against it. For the reasons set forth below, the Court

will grant in part and deny in part the motions to dismiss and strike.

## FACTS[1]

The Insurers sold the Tippetts a homeowners' insurance policy, policy number

HI00873923. This policy for their home in Philadelphia was in effect on July 23, 2013,[2] the day

---

[1] The following facts are drawn from the Tippetts' Complaint.

[2] The Tippetts did not attach a copy of the policy as an exhibit to their Complaint, but the
Insurers attached a copy of the policy as Exhibit B to their Motion to Dismiss. Insurers Mot. to
Dismiss, Ex. B. In deciding a Rule 12(b)(6) motion, "a court must consider only the complaint,

a fire caused extensive damage to the Tippetts' house and personal belongings. The Tippetts moved into temporary housing while they submitted their insurance claims and waited for repairs.

The Tippetts hired A-Plus Public Adjusters (A-Plus) to assist them with filing insurance claims under the homeowners' policy. The Insurers hired Defendant All American to document the damage to the Tippetts' home and prepare an estimate for the cost of fixing it. After All American prepared its estimate, the Insurers refused to pay for the full losses the Tippetts suffered. Because the Insurers refused to pay for the Tippetts' full losses, their home remains unfit for occupancy, and they continue to reside elsewhere.

**DISCUSSION**

To withstand a motion to dismiss under Federal Rule of Evidence 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Tippetts' claims are based on the homeowners' policy, and they do not dispute the authenticity of the document. Thus, the Court will consider the policy in deciding the Insurers' motion to dismiss.

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[S]triking a pleading is a 'drastic remedy' to be used sparingly because of the difficulty of deciding a case without a factual record." *BJ Energy, LLC v. PJM Interconnection, LLC*, Nos. 08-3649, 09-2864, 2010 WL 1491900, at *1 (E.D. Pa. Apr. 13, 2010) (quoting *N. Penn. Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158-59 (E.D. Pa. 1994)). Such motions "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *N. Penn. Transfer*, 859 F. Supp. at 158 (internal quotation marks omitted).

## A. Claims Against All Defendants

All Defendants move to dismiss Counts V, VI, VII, and VIII from the Complaint.

The Tippetts' Count V, alleging violations of the Pennsylvania Unfair Insurance Practices Act (UIPA) by all Defendants, will be dismissed. "Courts within the Third Circuit and the Commonwealth of Pennsylvania continue to recognize that the UIPA does not provide plaintiffs with a private cause of action." *Weinberg v. Nationwidecasualty and Ins. Co.*, 949 F. Supp. 2d 588, 598 (E.D. Pa. 2013) (citing *Leach v. Nw. Mut. Ins. Co.*, 262 F. App'x 455, 459 (3d Cir. 2008)). The Tippetts concede that a court cannot impose sanctions for UIPA violations, but assert Count V should survive the motions to dismiss because courts can consider UIPA violations to determine whether an insurer acted in bad faith under Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371. Regardless of whether the Court can consider evidence of UIPA violations for a bad faith claim, the Tippetts cannot bring a separate claim for UIPA violations because the statute does not provide them with a private cause of action. The Court therefore will dismiss Count V with prejudice as to all Defendants.

The Court will also dismiss Count VI, which alleges violations of the Uniform Trade Practices Consumer Protection Law (UTPCPL) by all Defendants. The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Con. Stat. § 201-3. Section 201-2(4) of the UTPCPL lists prohibited methods and acts and contains a "catch-all" provision, which prohibits "[e]ngaging in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.* § 204-2(4)(xxi).

The Tippetts base their UTPCPL claim on the "deceptive conduct" prong of the catch-all provision. Compl. ¶¶ 40-44. To state a claim under the catch-all provision, a plaintiff must either state the elements of common-law fraud or otherwise allege deceptive conduct. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 219 (3d Cir. 2008). Under either theory, a plaintiff must allege justifiable reliance. *See Hunt*, 538 F.3d at 224-27 (vacating order denying motion to dismiss because plaintiff failed to allege justifiable reliance in her UTPCPL claim); *Yocca v. Pitts. Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.").

The Tippetts' UTPCPL deceptive conduct claim is inadequately pled. The Tippetts allege the Insurers conducted an insufficient investigation of the fire and refused to cover the Tippetts' full losses, thus breaching the terms of the homeowners' policy. *See* Compl. ¶ 17. The Tippetts further allege that All American conducted an insufficient investigation of the fire and failed to prepare a complete estimate of the damages, thus breaching the insurer-adjuster contract. *See id.* ¶ 29. These general allegations are insufficient to plead Defendants' purported fraudulent or deceptive conduct. Even if Defendants made misrepresentations, the Tippetts fail to allege facts

showing that they believed the misrepresentations, let alone that they justifiably relied on the misrepresentations. The Tippetts' UTPCPL claims are dismissed without prejudice as to all Defendants.

The Tippetts' Count VII allegations of fraud by all Defendants are similarly insufficiently plead. To make out a fraud claim under Pennsylvania law, a plaintiff must allege: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *See Schnell v. Bank of N.Y. Mellon*, 828 F. Supp. 2d 798, 804-05 (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (citations omitted)). Federal Rule of Evidence 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.").

The Tippetts' boilerplate references to the elements of a fraud claim in their Complaint do not satisfy the requirements of Rule 9(b). *See* Compl. ¶¶ 46-47 (alleging "defendants made misrepresentations of material facts to others which were fraudulent in that the defendants knew they were untrue [and] intended that the plaintiffs rely on their fraudulent misrepresentations and the plaintiffs did so rely . . . ."). As for All American specifically, the Tippetts allege All American failed and refused to properly investigate and prepare a complete estimate of the Tippetts' damages, but do not explain All American's precise misconduct beyond alleging that its estimate was incomplete and omitted certain damages, including the costs of asbestos and

mold removal. *See* Compl. ¶ 29. Nor do the Tippetts allege facts showing that All American intended to induce the Tippetts' reliance on their misrepresentations. *See id*. As discussed above, the Tippetts also fail to allege facts showing that they justifiably relied on All American's misrepresentations. Because the Tippetts fail to inject precision into their fraud claim against All American, the Court will dismiss Count VII without prejudice as to All American.

Count VII against the Insurers, in contrast, will be dismissed with prejudice. The Insurers argue that in addition to being insufficiently plead, the Tippetts' fraud claim is barred by the gist of the action doctrine,[3] which prevents plaintiffs from recasting ordinary breach of contract claims as tort claims.[4] *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60-70 (Pa. 2014) (reviewing application of gist of the action doctrine by Pennsylvania courts); *Williamsburg Commons Condo Ass'n v. State Farm Fire & Cas. Co.*, 907 F. Supp. 2d 673, 679 (E.D. Pa. 2012) (holding the doctrine bars tort claims "arising solely from a contract between the parties . . . [or] where the liability stems from the contract"). The Tippetts' fraud claim is not collateral to the contract, but actually derives from Defendants' alleged failure to perform their duties under the insurance contract. Accordingly, it is barred by the gist of the action doctrine. *See eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 20-21 (Pa. Super. Ct. 2002) (holding plaintiff's fraud claims were barred by gist of the action doctrine because the acts "arose in the course of the parties' contractual relationship" and "the fraud claims [were] inextricably intertwined with the contract claims"). Count VII is dismissed with prejudice as to the Insurers.

Finally, all Defendants move to dismiss Count VIII, which alleges a claim for punitive damages, because no independent cause of action for punitive damages exists under

---

[3] All American does not raise this argument.

[4] The Tippetts do not address the gist of the action doctrine in their response. They contend only that their Complaint alleges fraud with particularity as required by Federal Rule of Civil Procedure 9(b). *See* Pl.'s Resp. to Def. Ameriprise and IDS's Mot. to Dismiss 3.

Pennsylvania law. *See Jefferies v. Ameriquest Mortg. Co.*, 543 F. Supp. 2d 368, 390 (E.D. Pa. 2008) (granting summary judgment on plaintiff's punitive damages claim because it "does not contain an independent cause of action"); *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (Pa. 1989) ("If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is only an element of damages."). The Tippetts concede that there is no standalone claim for punitive damages and request leave to amend the Complaint to allege punitive damages with their substantive claims. The Court will dismiss Count VIII with prejudice and grant the Tippetts' request.

### B. Claims Against All American Only

Defendant All American also moves to dismiss Counts III and IV of the Complaint.

In Count IV, the Tippetts allege All American was negligent in preparing the dwelling loss estimate for the Tippetts' home. All American responds that it owes no duty of care to the Tippetts. The parties agree that Pennsylvania law applies to the negligence analysis. The Supreme Court of Pennsylvania, however, has not addressed an insured's ability to bring a negligence claim against an independent insurance adjuster retained by the insured's insurance company. In such a circumstance, the Court must predict how the Supreme Court of Pennsylvania would rule, "look[ing] to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions . . . and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216-17 (3d Cir. 2010) (internal citations and quotation marks omitted). Because no intermediate appellate Pennsylvania courts or federal courts interpreting Pennsylvania law have determined whether an insurance adjuster owes a duty of care to the

insured, the Court looks to the decisions of other state supreme courts.[5]

The majority of state supreme courts to rule on the issue have determined an insured cannot bring a negligence claim against an independent insurance adjuster because an independent insurance adjuster owes the insured no duty of care. *See Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, 341 P.3d 75, 82, 84-87 (Okla. 2014); *Hamill v. Pawtucket Mut. Ins. Co.*, 892 A.2d 226 (Vt. 2005); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 586 S.E. 2d 586 (S.C. 2003).[6] *But see Morvay v. Hanover Ins. Co.*, 506 A.2d 333 (N.H. 1986) (holding independent adjusters owe a duty to both insurer and insured to conduct a fair and reasonable investigation despite lack of privity with insureds); *cf. Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281 (Alaska 1980) (holding an individual adjuster personally liable in negligence to insured for breaching the general tort duty of ordinary care by failure to adequately investigate insurance claim).[7] Additionally, the Seventh Circuit Court of Appeals recently predicted that the Indiana Supreme Court would hold adjusters owe no duty of care to insureds and cannot be sued for negligence. *See Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 641 &

---

[5] In support of its motion to dismiss, All American cites to a case in this district for the proposition that Pennsylvania law bars all tort claims by insureds against independent insurance adjusters retained by insurers. *See Peer v. Minn. Mut. Fire & Cas. Co.*, No. 93-2338, 1993 WL 533283 (E.D. Pa. Dec. 23, 1993). *Peer* does not stand for such a broad proposition. In *Peer*, the court predicted only that the Supreme Court of Pennsylvania would bar a plaintiff's tort suit for punitive damages arising from the bad faith practices of an insurance adjuster. *Id.* at *3-4.

[6] Lower appellate courts have reached the same conclusion in a number of other states. *See, e.g.*, *Akpan v. Farmers Ins. Exchange, Inc.*, 961 So. 2d 865 (Ala. Civ. App. 2007); *Meineke v. GAB Bus. Servs., Inc.*, 991 P.2d 267 (Ariz. Ct. App. 2000); *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 84 Cal. Rptr. 2d 799 (Cal. Ct. App. 1999); *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908 (Tex. App. 1997), disapproved on other grounds by *Apex Towing Co. v. Tolin*, 41 S.W.3d 118 (Tex. 2001); *King v. Nat'l Security Fire & Cas. Co.*, 656 So. 2d 1338 (Fla. Dist. Ct. App. 1995).

[7] While the Alaska Supreme Court held that an insured could hold an individual insurance adjuster personally liable for negligence based on agency principles, it did not address the issue of whether an insured can hold an insurance adjustment company liable for negligence.

n.11 (7th Cir. 2015) (predicting the Indiana Supreme Court would align itself with the "majority rule in American jurisdictions").

These courts offer two rationales as to why adjusters owe no duty of care to insureds. First, insureds may recover for an adjuster's torts through breach of contract and bad faith actions against their insurers. *Hamill*, 892 A.2d at 230; *see also Trinity Baptist Church*, 341 P.3d at 86 ("[F]rom a policy standpoint it makes little sense to hold that the adjuster has an independent duty when the insurer itself is subject to liability for the adjuster's mishandling of claims in actions alleging breach of contract and bad faith."); *Charleston Dry Cleaners*, 586 S.E.2d at 589 (noting an insured's ability to recover from insurer for independent adjuster's conduct). An insurer is subject to liability for even an independent adjuster's torts because the insurer "contractually controls the responsibilities of its adjuster and retains the ultimate power to deny coverage or pay a claim."[8] *Hamill*, 892 A.2d at 231. Because an insured may already recover for an adjuster's torts, imposing a duty of care on the adjuster to the insured "would allow for potential double recovery" from both insurer and adjuster for the same conduct. *Trinity Baptist Church*, 341 P.3d at 86. Second, imposing a duty on the adjuster to the insured could create "'an irreconcilable conflict between such duty and the adjuster's contractual duty to follow the instructions of its client, the insurer.'" *Id*. at 85 (quoting *Wallace v. Allstate Ins. Co.*, No. 12-310, 2012 WL 2060664, at *2 (W.D. Okla. June 7, 2012)); *see Hamill*, 892 A.2d at 231 ("Subjecting adjusters to potential tort liability from insureds could create conflicting loyalties with respect to the adjusters' contractual obligations, given that insureds and insurers often disagree on the extent of coverage or the amount of damages.").

---

[8] In this case, the contract between Ameriprise and All American states: "No authority is given [to All American] on any loss and Ameriprise Auto & Home Insurance will make all coverage determinations." All American Mot. to Dismiss, Ex. B at 6.

Both rationales for why adjusters owe no duty of care to insureds are consistent with existing Pennsylvania law. Pennsylvania courts permit insureds to sue their insurers for the actions of their insurers' agents, including adjusters. *See, e.g.*, *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 70 (Pa. 2014). Pennsylvania courts also recognize that independent insurance adjusters "owe a duty of performance to their principals, the insurance companies." *Bleday v. OUM Grp., et al.*, 645 A.2d 1358, 1363 (Pa. Super. Ct. 1994) (citing *Hudock v. Donegal Mut. Ins. Co.*, 264 A.2d 668, 672 (Pa. 1972)). The Supreme Court of Pennsylvania is unlikely to impose a duty of care on adjusters to insureds.[9] Thus, in light of the prediction that the Supreme Court of Pennsylvania will adopt the position that an adjuster owes no duty of care to an insured, the Court will grant All American's motion to dismiss Count IV with prejudice.

All American also moves to dismiss the Tippetts' Count III third-party beneficiary claim. Under Pennsylvania law, a party becomes a third-party beneficiary to a contract only if "both parties to the contract express an intention to benefit the third party in the contract itself." *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992). A party may not otherwise bring a third-party beneficiary claim "unless[] the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance of the promise satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id*. This exception to the express beneficiary rule is known as the

---

[9] The position taken by the New Hampshire Supreme Court in *Morvay v. Hanover Ins. Co.* conflicts with both rationales offered by the majority of state supreme courts. There, the court held that insureds could sue independent adjusters for negligence because the insureds are "foreseeably affected" third parties to the insurer-adjuster contract. *See* 506 A.2d at 335. As discussed above, Pennsylvania law protects insureds harmed by the negligence of insurance adjusters and it recognizes the duty adjusters owe to insurers. Adopting the New Hampshire approach would create a potential for double recovery as well as conflicting loyalties.

intended beneficiary test. *See Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983).

The Tippetts allege that the Insurers and All American entered into a contract "to prepare an estimate for the cost of repairing and replacing the damage to the dwelling as a result of the fire [and] intended and indicated in the contract that the plaintiffs should be a beneficiary of the contract." Compl. ¶¶ 26-27. All American attached a copy of the contract—a work order—between All American and the Insurers to its motion to dismiss.[10] Nowhere in the work order do the contracting parties express an intention that the Tippetts benefit from the contract. *See* All American Mot. to Dismiss, Ex. B. Thus, to proceed with this claim, the Tippetts must satisfy the intended beneficiary test.

For a party to be named an intended beneficiary, a court must first determine if the party meets the "standing requirement" which "leaves discretion with the trial court to determine if recognition of third party beneficiary status would be 'appropriate.'" *Guy*, 459 A.2d at 751 (citing Restatement (Second) of Contracts § 302). The Tippetts cannot satisfy this standing requirement because there are no compelling circumstances that would make it appropriate to recognize their third-party right. As discussed above, Pennsylvania law already permits insureds to recover for adjusters' misconduct via breach of contract actions against insurers. The Tippetts thus already have a remedy for All American's conduct, and it would be inappropriate to allow the Tippetts to also sue All American, with whom they lack contractual privity, when the Insurers remain liable for breaches caused by their agent, All American. *See Hudock*, 264 A.2d at 672.

The Tippetts also cannot satisfy the standing requirement because recognizing their third-

---

[10] The parties agree that this work order constitutes the contract between Ameriprise and All American and do not dispute its authenticity. *See* Pl.'s Resp. to Def. All American's Mot. to Dismiss 3. Thus, the Court will consider the contract in deciding All American's motion to dismiss Count III. *See Mayer*, 605 F.3d at 230.

party right would not effectuate the contracting parties' intent. The Insurers retained All American to aid their policy coverage determination for the Tippetts' fire damages, not to advocate for or benefit the Tippetts. That the Tippetts hired their own adjuster, A-Plus, to represent their interests during the claims process, suggests that the Tippetts knew All American's work was not intended for their benefit. Because the Tippetts are neither express nor intended third-party beneficiaries of the insurer-adjuster contract, the Court will grant All American's Motion to Dismiss Count III with prejudice.

### C. Motion to Strike

The Insurers move to strike the Tippetts' claim for attorney's fees, costs, and expenses in Count I. Absent a statutory or contractual basis, a plaintiff cannot seek attorney's fees, costs, and expenses. *See Scalia v. Erie Ins. Exchange*, 878 A.2d 114, 116-17 (Pa. 2005); *Lucchino v. Commonwealth*, 809 A.2d 264, 282 (Pa. 2002). Because the Tippetts do not plead a statutory basis for a fee and expenses award under Count I, nor does the insurance policy provide for such an award, the claim for attorney's fees, costs, and expenses will be stricken from Count I.

The Insurers also move to strike the Tippetts' claim for delay damages. Pennsylvania Rule of Civil Procedure 238 authorizes delay damages for bodily injury, death, or property damages in civil actions. Pa. R. Civ. P. 238. Rule 238 applies only to tort, not contract, actions. *Touloumes v. E.S.C., Inc.*, 899 A.2d 343, 349 (Pa. 2006) ("Rule 238 delay damages are not available in a breach of contract action where the damages sought are measurable by actual property damages."); *see also Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 171 (3d Cir. 2010) (explaining that in *Touloumes*, the Supreme Court of Pennsylvania "confirmed that [Rule 238] is limited to tort actions"). Since Count I is a contract claim, the Tippetts cannot obtain delay damages and the claims for such damages will be stricken from Count I.

Next, the Insurers move to strike the Tippetts' allegations of negligence, careless, reckless, wanton, willful, and outrageous conduct in Count I. The Insurers argue the Tippetts failed to plead facts to support their allegations that the Insurers' conduct was wanton and willful, and that because these allegations have no relevance to the breach of contract claim, they are immaterial and impertinent under Federal Rule of Civil Procedure 12(f). A plaintiff who brings a breach of contract claim under Pennsylvania law must allege: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *J.F. Walker Co. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002) (internal quotation marks and citations omitted). Whether the Insurers engaged in negligent, careless, reckless, wanton, willful, and/or outrageous conduct is immaterial and impertinent to a breach of contract claim, and the Tippetts' allegations of negligence, careless, reckless, wanton, willful, and outrageous conduct will be stricken from Count I.

Finally, the Insurers move to strike the Tippetts' reference to fiduciary duty in Count I. A standalone breach of fiduciary duty claim against an insurer cannot survive a motion to dismiss. However, it is unnecessary to strike the reference here. *See Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 531 (E.D. Pa. 2013) (dismissing a standalone breach of fiduciary duty claim against an insurer but denying the insurer's motion to strike other references to fiduciary duty in the Complaint). The reference to fiduciary duty will remain in Count I.

The Insurers move to strike the claim for compensatory and consequential damages in Count II. In Count II, the Tippetts allege the Insurers acted in bad faith when investigating their insurance claim, in violation of Pennsylvania's Bad Faith Statute, 42 Pa. Cons. Stat. § 8371.[11]

---

[11] There are two types of "bad faith" claims that an insured can bring against an insurer: a contract claim for breach of the implied contractual duty to act in good faith and a statutory bad faith tort claim under 42 Pa. Cons. Stat. § 8371. *See Birth Ctr. v. St. Paul Cos., Inc.*, 787 A.2d

Although the common law claim permits recovery of compensatory damages, the Bad Faith Statute does not permit recovery of compensatory damages or consequential damages. *See* 42 Pa. Cons. Stat. §8371 (permitting three types of recovery against the insurer: (1) interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) punitive damages; and (3) court costs and attorney fees); *see also Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 884 (Pa. 2007) ("[W]hile the insure[d] 'may not recover compensatory damages based on Section 8371, that Section does not alter [the insured's] common law contract rights.'" (quoting *Birth Ctr.*, 787 A.3d at 386)). The Tippetts did not bring a common law bad faith claim, so they are precluded from seeking these damages, and the Court will strike the Tippetts' claim for compensatory and consequential damages from Count II.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez_____
Juan R. Sánchez, J.

---

376, 390 (Pa. 2001) (Nigro, J. concurring). The Tippetts bring only a statutory bad faith claim.